EILEEN M. DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
LAWRENCE E. KOLE (Cal. Bar No. 141582)
Assistant United States Attorney
     411 West Fourth Street, Suite 8000
     Santa Ana, California 92701
     Telephone: (714) 338-3594
     Facsimile: (714) 338-3564
     E-mail:    larry.kole@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> IRENE PEMKOVA, T.N. IRENE PIMKOVA, <br><br> Defendant. | Case No. SA CR 08-180-DOC <br><br> POSITION OF GOVERNMENT WITH RESPECT TO THE PRESENTENCE REPORT AND SENTENCING POSITION FOR DEFENDANT IRENE PIMKOVA [F.R.Cr.P. 32] <br><br> Sentencing Date:  September 21, 2015 <br> Time:  1:30 p.m. <br> Place:  Courtroom of the Honorable David O. Carter |

Plaintiff United States of America hereby submits its Position with Respect to the Presentence Report and its Sentencing Position for defendant Irene Pimkova.

Dated:  September 11, 2015.          EILEEN M. DECKER
                                     United States Attorney
                                     DENNISE D. WILLETT
                                     Assistant United States Attorney
                                     Chief, Santa Ana Branch Office
                                                  /S/
                                     _____
                                     LAWRENCE E. KOLE
                                     Assistant United States Attorney

                                     Attorneys for Plaintiff
                                     United States Of America

**I.   INTRODUCTION**

Defendant was convicted at trial of all counts in the six-count indictment in this case on June 24, 2015.  On August 14, 2015, the United States Probation Office ("USPO") disclosed its Presentence Report ("PSR").

**II.  POSITION RE SENTENCING FACTORS**

The United States concurs with the total offense level and criminal history category calculated in the PSR by the USPO under the Sentencing Guidelines.  The United States also concurs with the factual statements in the Offense Conduct section of the PSR.

**III. POSITION RE SENTENCE**

    **A.   Downward Departure**

The government disagrees with the USPO's recommendation that a downward departure should be made.  Instead, the court should sentence defendant at the low end of the Guidelines range corresponding to defendant's total offense level (21) and Criminal History Category (I).  Such a sentence is appropriate and sufficiently takes into account the mitigating factors cited by the USPO for the following reasons.

Although the USPO asserts in its recommendation letter that the offense level overstates the seriousness of the offense, the intended loss is at the top limit of the loss bracket set forth in USSG § 2B1.1(b)(1)(H).  The same fourteen-level enhancement added here would apply even if the loss had been far less, as low as $400,000. If the intended loss here had been even a dollar higher (i.e., $1,000,001), the offense level would be two levels higher and the applicable sentence recommended by the Guidelines would be seven months higher.  Because this enhancement would result even from a

1

much smaller loss, its application here does not overstate the seriousness of this offense.

In addition, while the USPO is correct that its calculation is limited to an intended loss that could not occur because the victim here was, in reality, an undercover agent, defendant's conduct did place others at risk. While the indictment focused on defendants' attempt to defraud "Thomas Moore" (the undercover identity), the evidence that can be considered at sentencing is quite broad, USSG § 1B1.4 & comment. (backgr'd) (court may consider "without limitation, any information concerning the background, character, and conduct of the defendant," including information related to uncharged conduct). The evidence introduced at trial in this case shows that defendant was involved in fraudulent high yield solicitations of other individuals.

On December 1, 2006, co-defendant Beata Priore sent an email message to "Moore" in which it was stated that, in addition to "Moore," there were three other individuals who were "clients" that defendants were trying to get to invest with TSI Consulting Group, i.e., Mr. Damji, Mr. Wenzel, and Mr. Garrick. See PSR ¶¶ 19-26; Trial Exhibit 111 at 1. At this same time, defendant Pimkova was communicating with these three individuals, Damji, Wenzel, and Garrick, regarding potential investment. Trial Exhibits 177-78, 183-84, 189. Special Agent Thomas Reitz explained at trial that these three individuals were not government agents nor working with the government on the investigation and that, in fact, the government was unaware of their involvement with Pimkova at the time that it was occurring. Furthermore, months before the TSI contract was sent to "Moore," in connection with which he was being requested by

2

defendants to send $1,000,000 to Europe for a high yield investment, Pimkova sent a private email message to co-defendant Onciu in which she acknowledged that other individuals who she had tried to get to make investments in Europe had lost money, had "bad experience[s]," and would never again send money to Europe for an investment.  Trial Exhibit 176 at 2.

This evidence strongly indicated that Pimkova was involved in soliciting individuals to invest in high yield programs beyond just the undercover government agent.  Accordingly, the fact that one potential victim happened to be a government agent, as a result of which no loss was possible for him, does not cause the intended loss to be understated.  Instead, the evidence shows that the possible loss was not limited to the investment marketed to the undercover agent, which could not have resulted in actual loss, but, rather, included potential harm to real victims.  If included here, such solicitation of other investors could have increased the intended loss.  Because the loss calculation in the PSR is limited to only the "Thomas Moore" transaction and defendant's sentence is not being enhanced based on other potential victims, the offense level in the PSR does not overstate the seriousness of the offense.  Therefore, the court should not depart from the Guidelines range.

Furthermore, imposing a sentence at the low end of the applicable Guidelines range as the government recommends, rather than in the middle of the range or at the high end, even though defendant made no acceptance of responsibility, reduces defendant's sentence by up to seven months.  That reduction is sufficient to account for the mitigating factors cited by the USPO.  For the foregoing reasons, the government recommends that the court impose a low-end Guidelines

sentence.

**B.     Supervised Release Term**

Although the USPO's recommendation letter suggests that the court impose a two-year term of supervised release (and the government concurs in that recommendation), Letter at 6, its suggested statement of sentence refers to a three-year term of supervised release, Letter at 1.  If the court agrees with the two-year recommendation, its statement of sentence should so indicate. The government advised the USPO of this discrepancy and the officer stated that he would be correcting this with an addendum.