UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

THE HONORABLE DAVID O. CARTER, JUDGE PRESIDING

CERTIFIED TRANSCRIPT

UNITED STATES OF AMERICA,      )
                   Plaintiff,  }
      vs.                      }
                               }   SACR-08-180-DOC
IRENE PEMKOVA,                 )
                   Defendant.  }
----------------------------}

(Vol. 2 – 4:30 P.M.)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Santa Ana, California

June 22, 2015

SHARON A. SEFFENS, RPR
United States Courthouse
411 West 4th Street, Suite 1-1053
Santa Ana, CA  92701
(714) 543-0870

2

```
 1    APPEARANCES OF COUNSEL:

 2    For the Plaintiff:

 3    EILEEN DECKER
      United States Attorney
 4    DENNISE D. WILLETT
      Assistant United States Attorney
 5    Chief, Santa Ana Branch Office
      LAWRENCE E. KOLE
 6    Assistant United States Attorney
      8000 United States Courthouse
 7    411 West Fourth Street
      Santa Ana, CA  92701
 8    (714) 338-3594

 9    For the Defendant:

10    IRENE PEMKOVA, PRO SE

11    ALSO PRESENT:

12    H. DEAN STEWARD, STANDBY COUNSEL
      H. DEAN STEWARD LAW OFFICES
13    107 Avenida Miramar, Suite C
      San Clemente, CA  92672
14    (949) 481-4900

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | SANTA ANA, CALIFORNIA; MONDAY, JUNE 22, 2015; 4:32 P.M. |
| 2 | (Debbie Hino-Spaan reported Vol. 1) |
| 03:59   3 | THE COURT:  There is sufficient evidence presented |
| 04:32   4 | of Ms. Pemcova's intent to defraud and knowing participation |
| 04:32   5 | in the scheme, particularly when viewed in the light most |
| 04:32   6 | favorable to the government.  When she first made the false |
| 04:32   7 | representations, Ms. Pemcova did not say that these things |
| 04:32   8 | might be true or just I heard that they were true.  She |
| 04:32   9 | stated that it was facts that actually happened. |
| 04:32  10 | Furthermore, a rational jury could also infer that |
| 04:32  11 | the defendant made representations with the intent to |
| 04:32  12 | deceive or cheat because they were made while trying to |
| 04:32  13 | convince Mr. Moore to invest $4 million in a transaction |
| 04:33  14 | that would result in Ms. Pemcova and her co-conspirators |
| 04:33  15 | getting a share of the money. |
| 04:33  16 | Now, evidence of each of the wire transactions |
| 04:33  17 | charged in Counts Two through Six will be used to show that |
| 04:33  18 | these transmissions were made to carry out essential parts |
| 04:33  19 | of the scheme.  Ms. Pemcova sent e-mail messages to Mr. |
| 04:33  20 | Moore on November 29, 2006, which included documents that |
| 04:33  21 | needed to be completed for the investment and provided for |
| 04:33  22 | money to be paid to Mr. Onciu for participation in the |
| 04:33  23 | scheme, including facilitation and communication between |
| 04:33  24 | Moore and Priore.  And, in fact, she caused e-mail messages |
| 04:33  25 | to be sent to Mr. Moore by Priore on November 30 and |

4

04:33   1   December 1.

04:33   2         Priore's e-mails included additional documents

04:33   3   necessary to participate in the investment and provided

04:34   4   money to be paid to Priore and identified the operator of

04:34   5   the high-yield investment program.  The contents of these

04:34   6   messages by wire was demonstrated through Agent Reitz's

04:34   7   testimony and introduction that Priore sent the e-mail

04:34   8   messages.

04:34   9         There is ample evidence that these messages

04:34   10  traveled in interstate commerce.  Ms. Pemcova indicated that

04:34   11  she moved from Las Vegas, Nevada.  She stated repeatedly she

04:34   12  is located in Nevada, including at the time that she sent

04:34   13  the e-mail messages on which Counts Two and Three were

04:34   14  based.

04:34   15        Priore stated that she lived in New York from the

04:34   16  time references in e-mails, including underlying Counts 4,

04:34   17  5, and 6 and other e-mail messages reflect that the messages

04:34   18  were sent between Eastern and Pacific time zones.

04:34   19        Furthermore, representatives of the internet

04:34   20  service providers who transmitted these messages testified

04:34   21  that the messages had to travel outside of California, and

04:35   22  they were processed by servers in Arizona and Nevada.

04:35   23        The evidence also is sufficient for a rational jury

04:35   24  to find that Ms. Pemcova joined the conspiracy to commit

04:35   25  wire fraud.  She told Mr. Moore that she knew Onciu very

04:35   1   well.  She obtained Onciu's agreement to allow Moore to

04:35   2   invest without traveling to Germany, and Onciu's involvement

04:35   3   was to enter into the transaction.  And Ms. Pemcova wrote in

04:35   4   coordination with Priore to get those documents submitted to

04:35   5   Ms. Priore who was communicating directly with the European

04:35   6   principals.

04:35   7          She also initiated and arranged the communications

04:35   8   between her co-conspirators, Priore, Onciu, and Moore.  And

04:35   9   in a conference call between Moore, Priore, and Onciu, Onciu

04:35   10  explained the interrelationship and cooperative role by the

04:35   11  three conspirators to arrange Moore's investment.

04:35   12         The evidence discussed regarding Counts Two through

04:36   13  Six show that the conspiracy was a joint effort to commit

04:36   14  wire fraud.  And it shows the defendant's participation in

04:36   15  the scheme and provided an ample basis for a rational jury

04:36   16  viewing it in the light most favorable to the government to

04:36   17  find Ms. Pemcova joined in the conspiracy to commit wire

04:36   18  fraud.

04:36   19         A rational jury could also conclude that Ms.

04:36   20  Pemcova joined the conspiracy knowing of its object and

04:36   21  intending to help accomplish it.  The best evidence of a

04:36   22  false representation to get money from Moore and

04:36   23  participation in a scheme in which such representations were

04:36   24  made -- Ms. Pemcova's attempt to defraud Mr. Moore -- a

04:36   25  rational jury could conclude that Ms. Pemcova joined the

04:36  1   conspiracy knowing of its object and intending to help
04:36  2   accomplish it.
04:36  3        Viewing the evidence in the light most favorable
04:36  4   to the government, a rational jury could conclude that at
04:36  5   least one of the members of the conspiracy performed at
04:36  6   least one overt act on or after November 29, 2006, for the
04:37  7   purpose of carrying out the conspiracy.
04:37  8        The Rule 29 motion is denied.
04:37  9        Concerning the motion for the government
04:37  10  transcripts, this was also received ala carte.  There is a
04:37  11  motion to get the transcript of all government witnesses'
04:37  12  testimony prior to continuing the defense case.  This would
04:37  13  be tantamount to a daily.  The Court is denying that request
04:37  14  by Ms. Pemcova.
04:37  15       Next, the Court received a whole series of
04:37  16  requests for continuances based on the following.
04:37  17       The first is for Mr. Moon William Winfield.  Ms.
04:37  18  Pemcova requests:  "Any and all documents you have regarding
04:37  19  your relation with your two famous friends/business partners
04:38  20  in Washington."  This witness lives in Alabama.
04:38  21       The second is for Rose Marie Pitt.  There is a
04:38  22  request for:  "Any and all documents you have regarding the
04:38  23  mental evaluation you have performed for the case."  I
04:38  24  believe the evaluator is a psychologist, and this evaluator
04:38  25  was involved in the case concerning present mental

04:38  1    competency.

04:38  2          The third is for Veronica Thomas.  There is a

04:38  3    request for the following:

04:38  4          "1.  The letter dated September 13, 2013, you have

04:38  5    issued for Diane C. Bass.

04:38  6          "2.  Any and all documents you have regarding said

04:39  7    letter."

04:39  8          Thomas is the other doctor who the Court recalls

04:39  9    did an evaluation for present mental competency.

04:39  10         The fourth is for Dr. Leslie Johnson at the

04:39  11   Metropolitan Detention Center – Los Angeles.  "Any and all

04:39  12   documents you have regarding both mental evaluations you

04:39  13   have conducted for the case."  I believe she is a

04:39  14   psychologist.

04:39  15         The fifth is for Dr. Lisa Hope at the Metropolitan

04:39  16   Detention Center – Los Angeles.  "Any and all documents you

04:39  17   have regarding both mental evaluations you have conducted."

04:39  18         The sixth witness is Dr. Gerber, a psychologist at

04:39  19   the Metropolitan Detention Center.  "Any and all documents

04:39  20   you have regarding the mental evaluation you have conducted

04:39  21   for the case."

04:39  22         The seventh request is for L.R. Thomas, Warden of

04:39  23   MDC:

04:39  24         "1.  Any and all documents available regarding

04:39  25   both mental evaluations conducted by MDC–LA for the case.

04:39  1          "2.  Records for January 14, 2014 - February 27,

04:40  2   2014."

04:40  3          These evaluations were for her present mental

04:40  4   competency, not ordered for her past mental state when the

04:40  5   case was allegedly being committed.

04:40  6          Ms. Pemcova, if I could perhaps ask you to explain

04:40  7   the relevance of these, it would be very much appreciated.

04:40  8          MS. PEMCOVA:  The reason why I asked for these

04:40  9   records is Mr. Moore is a key for many of the statements

04:40  10  which have been made by Agent Reitz and Thomas Moore.

04:40  11         And the people regarding the mental evaluation, I

04:40  12  was quite surprised when I found in preparation for the case

04:40  13  that four evaluations have been provided, 17 documents, and

04:40  14  then the Cigna evaluation data.  That's why these people

04:40  15  have to be -- what they have done with it.  On the 17

04:41  16  documents, there are several documents which they have to be

04:42  17  cross-examined on.  The same for the letter from Veronica

04:42  18  Thomas.  It's a big question mark.  If she received the same

04:42  19  list of documents, it's necessary to find out what she has

04:42  20  done with them.

04:42  21         THE COURT:  Mr. Steward, do you have any comments?

04:42  22  If not, we will turn to the government.

04:42  23         MR. STEWARD:  I do not.

04:42  24         THE COURT:  I'm not sure if the government is even

04:42  25  involved in this motion.

04:42   1          I am having difficulty understanding the issue

04:42   2   concerning present mental competence when the psychologist

04:42   3   did not evaluate you for past mental competence.

04:42   4          As to witnesses Rose Marie Pitt; Veronica Thomas,

04:42   5   who previously testified; Leslie Johnson, Lisa Hope, Dr.

04:43   6   Gerber, and the seventh witness listed, L.R. Thomas, the

04:43   7   Warden at MDC, I'm denying this request because I can't find

04:43   8   the relevancy concerning your present mental competence,

04:43   9   which is what these evaluations were about and how that

04:43   10  would go before the jury.  The only issue might be your past

04:43   11  mental competence which these doctors did not examine you

04:43   12  on.

04:43   13         Winfield -- I don't understand -- you have

04:43   14  requested documents regarding your relations with your two

04:43   15  famous friends/business partners.  I don't understand who he

04:43   16  is.

04:43   17         MS. PEMCOVA:  He is the gentleman, Your Honor, who

04:43   18  introduced me to Dr. Onciu, and then there is the gentleman

04:43   19  who transferred out the documents who is involved.  He is

04:44   20  another party which has been just like many before --

04:44   21         THE COURT:  Let me take a few moments to go back

04:44   22  for just a moment and do some reflection on that.  I want to

04:44   23  take one more look at the records.

04:44   24         Now, for the motions I received during the recess

04:44   25  with jury instructions, et cetera, that covers all the

04:44  1    notations I have made, but I may have another motion that I

04:44  2    may have not addressed by the government or the defense.

04:44  3         MR. KOLE:  Actually, Your Honor, when we were

04:44  4    talking about the Motion to Dismiss the Indictment, I think

04:44  5    the Court then started to discuss the Rule 29 motion without

04:44  6    making a ruling on the record about the Motion to Dismiss

04:44  7    the Indictment.

04:44  8         THE COURT:  My apologies.  I'm denying the motion

04:44  9    to Dismiss the Indictment.  I segued right into the Rule 29.

04:44  10        Well, if you would remain for just a moment.  Why

04:44  11   don't each of you check your records and make sure I have

04:44  12   covered each of the items that have been brought to the

04:45  13   Court's attention because some items I just received this

04:45  14   morning.

04:45  15        (Recess.)

04:52  16        THE COURT:  I want to have a discussion with you,

04:52  17   Mr. Steward, and, Ms. Pemcova.  We are outside the presence

04:52  18   of the jury.

04:52  19        There are some documents that you filed under

04:52  20   seal.  Before I get into the specifics of those, I would

04:52  21   like to be cautious and ask Mr. Kole and the investigator

04:52  22   and anybody in the courtroom to remain outside.

04:52  23        MR. KOLE:  There was one other motion that Ms.

04:52  24   Pemcova filed that we didn't cover, her motion to put the

04:52  25   prosecution under oath.

04:52    1                 THE COURT:  Well, we will get to that in just a

04:52    2    minute.

04:52    3                 This is under seal.

04:52    4                 (Courtroom cleared.)

04:52    5                 (The following portion was under seal:)

04:52    6                 THE COURT:  I generally alluded to a number of

04:52    7    witnesses, but I want to get into a document on page 11

04:53    8    because it's rather specific about what you are requesting.

04:53    9    It states the following:

04:53   10                 "1.   The documents available for review consist of

04:53   11    the United States Department of Justice, Federal Bureau of

04:53   12    Investigation, receipt for property received, returned,

04:53   13    released, or seized, 19 pages, dates range from 06/2008 to

04:53   14    08/18/2008.

04:53   15                 "2.   A summary of telephone messages dated

04:53   16    August 18, 2008;

04:53   17                 "3.   The United States Department of Justice,

04:53   18    Federal Bureau of Investigation, FB 302, transcribed

04:53   19    interviews, 35 pages, dates ranging from 2/25/2003 to

04:53   20    9/9/2010;

04:53   21                 "4.   Clarion American Assessment Management, Inc.,

04:53   22    nine pages;

04:53   23                 "5.   Documents related to Bill Britt, 17 pages,

04:54   24    ranging from January 4, 2006, to September 1, 2010;

04:54   25                 "6.   Baltimore Division control file, other wire

04:54   1   and mail fraud schemes, five pages dated April 9, 2007;

04:54   2   "7.   United States District Court, Denver,

04:54   3   Colorado, Civil Docket, Singer versus Ms. Pemcova, et al.,

04:54   4   dated November 13, 2012;

04:54   5   "8.   Case summary prepared by the case agent dated

04:54   6   December 21, 2007;

04:54   7   "9.   United States District Court, Central

04:54   8   District of California, Affidavit for a Search Warrant, 63

04:54   9   pages, dated August 13, 2008;

04:54   10   "10.   Telephone transcripts, 501 pages, dates

04:54   11   range from 2/24/2006 to March 7, 2007;

04:54   12   "11.   United States District Court, Central

04:54   13   District of California, Southern Division, Indictment, dated

04:54   14   July 3, 2008;

04:54   15   "12.   United States District Court, Central

04:54   16   District of California, Southern Division, Trial Memorandum,

04:55   17   dated September 7, 2013;

04:55   18   "13.   Three audio recordings dated February 27,

04:55   19   2006; November 29, 2006; December 11, 2006;

04:55   20   "14.   A letter from Veronica Thomas dated

04:55   21   September 13, 2013;

04:55   22   "15.   United States District Court, Central

04:55   23   District of California, Supplemental Declaration in Support

04:55   24   of Ex Parte Application Seeking an Order Relieving Counsel,

04:55   25   dated September 13, 2013;

04:55  1          "16.  Seven e-mails ranging from October 17, 2011,

04:55  2  to September 12, 2013;

04:55  3          "17.  Evaluation of Dr. Rose Marie Pitt dated

04:55  4  November 14, 2013.

04:55  5          You say:  "All the available materials were

04:55  6  reviewed in detail.  However, for the sake of brevity and

04:55  7  clarity, only summary information as it pertains to the full

04:55  8  question is provided herein."

04:56  9          So let me ask you -- I want to make certain that

04:56  10  each of those documents I read -- that you in fact were

04:56  11  correct when you said that you reviewed each of those

04:56  12  documents.

04:56  13          MS. PEMCOVA:  No.  This is the problem.  I have

04:56  14  seen for the first time these documents written here.  I had

04:56  15  no idea they had been provided for the mental evaluation,

04:56  16  but they explain a lot.  When I got -- Agent Reitz --

04:56  17          THE COURT:  Are these all documents that pertain

04:56  18  to your mental evaluation?

04:56  19          MS. PEMCOVA:  I have no idea why they are there.

04:56  20          THE COURT:  Certainly if there are audio

04:56  21  recordings that you haven't received, for instance, on

04:56  22  February 27, 2006; or November 29, 2006, or December 11,

04:57  23  2006, I'm going to call the government back in and ask about

04:57  24  those.

04:57  25          Concerning most of the other items, if they

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

04:57   1   pertain to present mental competency, then I will simply

04:57   2   solidify my ruling, and that is that they are irrelevant at

04:57   3   least for this jury.

04:57   4         If you have seven e-mails ranging from October 17,

04:57   5   2011, to September 12, 2013, and those are relevant within

04:57   6   the time period, I would admit those.  But it seems to me

04:57   7   that these occurrences occurred far before that time, so I'm

04:57   8   guessing that these e-mails pertain to your present mental

04:57   9   competency.

04:57  10         No. 17, the request of Dr. Rose Marie Pitt is

04:57  11   dated 2013, so I'm guessing it's present mental competency.

04:57  12         No. 15, the application seeking an order relieving

04:57  13   counsel of September 13 I would assume is present mental

04:57  14   competency issues.

04:57  15         No. 14, the letter from Veronic Thomas dated 2013

04:57  16   I'm assuming is present mental competency issues.

04:58  17         So the first is 13 that I'm concerned about.  I

04:58  18   want to make certain you have received them.

04:58  19         The United States Southern Division Trial

04:58  20   Memorandum dated September 17, 2013, is a matter of public

04:58  21   record.  We can certainly get that for you.  But it's an

04:58  22   issue I think concerning present mental competency.

04:58  23         No. 11, working backwards is the Indictment dated

04:58  24   July 3, 2008, but your counsel and you should have a copy of

04:58  25   that Indictment.

04:58    1          No. 10, the telephone transcripts, 501 pages dated
04:58    2    September 24, 2006, to March 7, 2007, I am happy to make
04:58    3    certain you have those.  I thought you had.

04:58    4          No. 9, the affidavit for the search warrants, 63
04:58    5    pages, I thought you had that.  If not, we can certainly get
04:58    6    that to you.

04:59    7          The case summary prepared by the case agent dated
04:59    8    December 21, 2007, there has already been testimony
04:59    9    concerning that.

04:59   10          No. 6, the Baltimore Division control file, other
04:59   11    wire and mail fraud schemes, five pages, dated April 9,
04:59   12    2007, I don't know what that is, and I apologize.

04:59   13          No. 7, the United States District Court, Denver,
04:59   14    Colorado, civil docket, Singer versus Pemcova, dated
04:59   15    November 13, 2012, I believe that this was well after you
04:59   16    were charged with this crime.  I don't see why that's
04:59   17    relevant.

04:59   18          No. 5, the documents related to Bill Britt, 17
04:59   19    pages ranging from January 4, 2006, to September 1, 2010, I
04:59   20    would like to hear more about, please.

04:59   21          No. 4, Clarion American Assessment Management,
04:59   22    Inc., nine pages, I don't understand it except I believe
05:00   23    that pertains to present mental competence.

05:00   24          No. 3, the United States Department of Justice,
05:00   25    Federal Bureau of Investigation, FB-302, transcribed

05:00   1   interviews, 35 pages, ranging from February 25, 2003, to

05:00   2   September 9, 2010, I'll question the government about that.

05:00   3          The summary of telephone messages dated August 18,

05:00   4   2008, I'm not sure what that pertains to.  If something is

05:00   5   missing, I certainly want you to have that.

05:00   6          No. 1, the United States Department of Justice,

05:00   7   Federal Bureau of Investigation receipt for property

05:00   8   received, returned, released, or seized, 19 pages, ranging

05:00   9   from August 6, 2008 to August 18, 2008.

05:00  10          Let me refer you to pages 11 and 12.  I'm

05:00  11   concerned about 1, 2, 3, 4, 5, 6, and 7.  I'm concerned

05:01  12   about 9, 10, and 13.  So would you like to address the

05:01  13   Court.

05:01  14          MS. PEMCOVA:  Yes.  First of all, I would like to

05:01  15   why certain documents are here at all.

05:01  16          Number two, for example, Clarion American

05:01  17   Assessment Management -- Mr. Bolshavany (phonetic) died in

05:01  18   2011 or 2012.  What was he doing on my mental evaluation in

05:01  19   2013 and '14.  Because during the preparation for the case,

05:01  20   Your Honor, and in reviewing the documents in the partial

05:01  21   discovery which was provided to the defense by Diane Bass,

05:01  22   there are very serious discrepancies.

05:02  23          If the government has put things here, I have to

05:02  24   archive and prove it's not true.  These documents provide a

05:02  25   completely different vision or picture of the person who was

05:02  1   examined.

05:04  2          THE COURT:  Which of these documents don't you

05:04  3   have?  No. 1, the property receipt, which is 19 pages from

05:04  4   August 6, 2008, to August 18, 2008, Mr. Steward, do you have

05:04  5   those documents?

05:04  6          MR. STEWARD:  I have seen the search warrant.  I

05:04  7   believe those are inventories.  I'm just not sure whether I

05:04  8   recall seeing those or not.

05:04  9          MS. PEMCOVA:  I did, Your Honor, possibly --

05:04  10         THE COURT:  Have you seen those documents because

05:04  11  you are requesting them?

05:05  12         MS. PEMCOVA:  Your Honor, it is necessary to

05:05  13  conform with the government --

05:05  14         THE COURT:  Are you requesting these documents?

05:05  15         MS. PEMCOVA:  Your Honor, in the exhibit were some

05:05  16  documents, but it's not clear they are the same.

05:05  17         THE COURT:  I want to make certain you have a

05:05  18  prepared defense.

05:05  19         Let me ask again do you have these documents?

05:05  20  Have you seen these documents?

05:05  21         MS. PEMCOVA:  I have seen what was in the exhibit.

05:05  22         THE COURT:  Let me get the government in for a

05:05  23  second.  I really need to find out.

05:05  24         Mr. Steward, would you be so kind.

05:05  25         I proceeded in-camera under caution, but I can't

05:05   1   get very far now without the government's help.

05:06   2           (End of sealed portion.)

05:06   3           (Mr. Kole enters courtroom.)

05:06   4           THE COURT:  Do you know on behalf of the

05:06   5   government has Ms. Pemcova or counsel received United States

05:06   6   Department of Justice, Federal Bureau of Investigation,

05:06   7   receipt for property received, returned, released, or seized

05:06   8   which is 19 pages ranging from August 6, 2008, to August 18,

05:06   9   2008?  Mr. Steward thinks that that is an inventory list.

05:06   10  Ms. Pemcova thinks she has seen it.  But I am being very

05:06   11  cautious and want to make certain.

05:06   12          MR. KOLE:  There is something like that in the

05:06   13  discovery.  I don't know if it is quite as long as 17 pages.

05:06   14          THE COURT:  I'm going to ask the law clerk

05:06   15  eventually to get that but not right this moment.  There may

05:06   16  be a series of things which we try to get.

05:06   17          A summary of telephone messages dated August 18,

05:06   18  2008, I thought we had all of the telephone messages here.

05:07   19          MS. PEMCOVA:  Where is the summary?

05:07   20          THE COURT:  Well, we don't need a summary if you

05:07   21  have got the actual messages.  So I'm going to decline that

05:07   22  request.  The government doesn't have to simply write out a

05:07   23  summary for you.

05:07   24          The third is the United States Department of

05:07   25  Justice, Federal Bureau of Investigation FB 302, transcribed

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

05:07  1   interviews, 35 pages, dates ranging from February 25, 2003,

05:07  2   to September 9, 2010.  I don't know what that is.  Is that

05:07  3   the 302 report prepared by the agent?

05:07  4            MR. KOLE:  It's 30 pages.

05:07  5            THE COURT:  Okay, thirty pages rather than 35.  It

05:07  6   doesn't matter.  This is the 302.

05:07  7            Mr. Steward, do you have that report?

05:07  8            MR. STEWARD:  I believe we did.

05:07  9            THE COURT:  Ms. Pemcova, have you seen this

05:07  10  report?

05:08  11           MS. PEMCOVA:  No.

05:08  12           THE COURT:  Did you ask Mr. Steward?

05:08  13           MS. PEMCOVA:  He didn't work on the case.

05:08  14           MR. STEWARD:  I'm a little confused because a 302

05:08  15  is generally not a transcript.

05:08  16           THE COURT:  Well, let's just call it a 302.

05:08  17           MR. KOLE:  Yes, we have produced the 302 reports.

05:08  18           THE COURT:  Ms. Pemcova, you will get that from

05:08  19  Mr. Steward.

05:08  20           THE COURT:  The Clarion American Assessment

05:08  21  Management, nine pages, what is that?

05:08  22           MR. KOLE:  That is a new one to me.  I'm not going

05:08  23  to say that there is nothing in the records with that name,

05:08  24  but it doesn't sound familiar to me.

05:08  25           MS. PEMCOVA:  Clarion American Assessment

05:08   1   Management is Mr. Bolshavany who died of cancer back in 2012

05:08   2   or 2013 I believe, the owner from Milwaukee, Wisconsin.

05:09   3          THE COURT:  And the relevance?

05:09   4          MS. PEMCOVA:  I don't know.  I am asking why it is

05:09   5   here, why it was provided for the mental evaluation at all.

05:09   6          THE COURT:  You have actually seen it?

05:09   7          MS. PEMCOVA:  No.  I am surprised -- I see the

05:09   8   list in -- Your Honor, I took it from the report --

05:09   9          MR. KOLE:  I think I understand, Your Honor.  Ms.

05:09   10  Pemcova I think was reading from a list contained in a

05:09   11  report of the psychiatric and competency evaluation that

05:09   12  seemed to indicate several documents that were provided to

05:09   13  the evaluator.  I guess that was a document she saw

05:09   14  described as having been provided, but Ms. Pemcova says I

05:09   15  don't remember that in the discovery.  Where did it come

05:09   16  from, and why was it given to the evaluator?

05:09   17         MS. PEMCOVA:  Yes, exactly.

05:09   18         THE COURT:  But the evaluator the present mental

05:10   19  competency evaluator.  It's irrelevant.

05:10   20         THE COURT:  No. 5, the documents related to Bill

05:10   21  Britt, 17 pages, ranging from January 4, 2006, to

05:10   22  September 1, 2010.  Now, either in or outside your presence,

05:10   23  Mr. Kole, I'm ruling that present competency is not relevant

05:10   24  for the jury.  But I can't tell from these requests whether

05:10   25  this is some kind of documentary evidence that pertains to

05:10   1    the guilt or innocence of the defendant or these are mental

05:10   2    health evaluations or pages that go with it.

05:10   3              Do you have any idea what this Bill Britt document

05:10   4    is?

05:10   5              MR. KOLE:  Yes.  There was an investigation done

05:10   6    of Mr. Britt who we believed was a potential victim.  We

05:10   7    produced that as part of discovery.  I think that's probably

05:10   8    how the evaluators got it.  It was from the discovery I

05:10   9    assume.

05:10   10             THE COURT:  Mr. Steward.

05:10   11             MR. STEWARD:  I'm sure I have it somewhere.  I'm

05:10   12   not familiar with it.  As to that portion, I was not

05:10   13   involved nor appointed.

05:10   14             THE COURT:  It's represented the defense has it,

05:10   15   so --

05:11   16             MR. STEWARD:  I'll look.

05:11   17             THE COURT:  No. 6, the Baltimore Division control

05:11   18   file concerning mail fraud schemes.  It's five pages dated

05:11   19   April 9, 2007, what is this about?  Mr. Kole, do you have

05:11   20   any idea?

05:11   21             MR. KOLE:  That one sounds totally unfamiliar to

05:11   22   me.  I'm thinking perhaps Ms. Bass when she was counsel may

05:11   23   have provided some documentation that she got from Ms.

05:11   24   Pemcova to the evaluators at that time, things that the

05:11   25   government did not have.

22

05:11   1          THE COURT:  Ms. Pemcova, do you recognize this

05:11   2   Baltimore Division control file document?

05:11   3          MS. PEMCOVA:  No.  That's why I am asking.

05:11   4          THE COURT:  It's hard for me to cause something to

05:11   5   be produced that I don't know where it is or what it is.

05:11   6   Did Ms. Bass represent this to you?

05:12   7          MS. PEMCOVA:  No.  Maybe it would be easier if the

05:12   8   prosecution provide again the discovery and I can go over

05:12   9   it.  That would be the easiest way than to waste everybody's

05:12  10   time.

05:12  11          THE COURT:  Well, we have the discovery.  We have

05:12  12   been going through discovery now for seven years.  I'm

05:12  13   trying to regurgitate and even re-give discovery that's

05:12  14   important for the guilt or innocence phase, but just this

05:12  15   broad sweeping request is not appropriate.

05:12  16          THE COURT:  What about this Denver, Colorado,

05:12  17   docket, Singer versus Pemcova, dated November 13, 2012?

05:12  18   That shouldn't pertain to guilt or innocence.  Isn't that a

05:12  19   mental health document?

05:12  20          MR. KOLE:  I don't know whether or not it pertains

05:12  21   to it, but it's part of discovery.  In the event that the

05:12  22   defense thought it was material to the defense, we did

05:12  23   produce them a copy of the docket sheet.  Since those

05:12  24   documents are publicly available -- they are public court

05:12  25   documents.  We didn't produce every document from it, and I

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

05:12    1    don't even have every document from it, but we gave them the

05:12    2    docket sheet so they could look it up and get those

05:13    3    documents if they wanted to.

05:13    4            THE COURT:  Okay.  I'm not going to cause its

05:13    5    production, Ms. Pemcova.  You can get that if it's relevant.

05:13    6            Case summary prepared by the case agent dated

05:13    7    December 21, 2007.  I don't understand what that is.  I know

05:13    8    he had a 302.

05:13    9            MR. KOLE:  There are a number of 302s about

05:13   10    witness interviews.  Agent Reitz did prepare a summary of

05:13   11    the case, and there was a thing like that produced in

05:13   12    discovery.  That's probably where that came from.

05:13   13            THE COURT:  So it was produced in discovery.  All

05:13   14    right.

05:13   15            No. 9 is the United States Affidavit for a Search

05:13   16    Warrant, 63 pages in length.  Mr. Steward wasn't certain if

05:13   17    he had that.

05:13   18            MR. STEWARD:  The 63 pages threw me off.  We have

05:13   19    a series of search warrants.  I think there are like five of

05:13   20    them, but there are not 63 pages.

05:13   21            THE COURT:  And you have those in your possession

05:13   22    so Ms. Pemcova can see them?

05:13   23            MR. STEWARD:  Ms. Pemcova has them.

05:14   24            THE COURT:  Thank you.  They have been produced.

05:14   25            No. 10, the telephone transcripts, 501 pages,

05:14  1   ranging from February 24, 2006, to March 7, 2007.  What are

05:14  2   these?  I thought the telephone transcripts were documents

05:14  3   we had.

05:14  4          MR. KOLE:  I think those are the transcripts we

05:14  5   have all been looking at during the trial.  They were

05:14  6   produced in discovery.  They probably were provided to the

05:14  7   evaluators.

05:14  8          THE COURT:  Those have been provided to the

05:14  9   defense.

05:14  10          No. 11, United States District Court, Central

05:14  11   District of California, Indictment, dated July 3, 2008.

05:14  12   Certainly we have all that.

05:14  13          Ms. Pemcova, you can get that from your counsel.

05:14  14          MS. PEMCOVA:  I have that.

05:14  15          THE COURT:  All right.  Thank you.

05:14  16          No. 12, United States District Court, Central

05:14  17   District of California, Southern Division, Trial Memorandum,

05:14  18   dated September 17, 2013.  What is that?

05:14  19          MR. KOLE:  That sounds like it probably was a

05:15  20   trial memorandum that the government prepared and filed in

05:15  21   connection with Onciu's trial.  Again, I think all of these

05:15  22   documents must be coming off a list of documents that one of

05:15  23   the evaluators in their report saying this is what I have

05:15  24   been provided.

05:15  25          THE COURT:  All right.  No. 13, three audio

05:15   1   recordings dated February 27, 2006; November 29, 2006; and

05:15   2   December 11, 2006.  I think we already have those recordings

05:15   3   in evidence.

05:15   4           MR. KOLE:  Right.

05:15   5           THE COURT:  They have already been produced.

05:15   6           No. 14, a letter from Veronica Thomas.  Now, this

05:15   7   is my guess of where it is coming from.  It must be coming

05:15   8   from Ms. Thomas's file.  These are all a summary that Ms.

05:15   9   Pemcova has seen of different evaluations or different items

05:15   10  that were submitted by one of the doctors.

05:15   11          MR. KOLE:  Your Honor, the fact that it is Ms.

05:15   12  Thomas's letter confirms for me that these are all things

05:15   13  that came from Ms. Bass because Ms. Thomas did not

05:16   14  communicate with the government.  She is the psychiatrist

05:16   15  that Ms. Bass on her own talked to.

05:16   16          MS. PEMCOVA:  I have never seen it.  I have never

05:16   17  looked at it.  I have just heard about it from the document.

05:16   18  They are in the documents.

05:16   19          THE COURT:  It's irrelevant to guilt or innocence

05:16   20  at this stage.

05:16   21          No. 15, United States District Court, Central

05:16   22  District of California, Supplemental Declaration in Support

05:16   23  of Ex Parte Application Seeking an Order Relieving Counsel

05:16   24  and the Exhibits.  That's irrelevant for this stage.

05:16   25          No. 16, seven e-mails, dates ranging from

05:16    1   October 17, 2011, to September 12, 2013.  I think all the

05:16    2   e-mails have been produced.

05:16    3           MS. PEMCOVA:  Your Honor, I think this is what

05:16    4   Diane Bass used to initiate the mental evaluation.  I'm

05:16    5   guessing that is what it is mostly likely.

05:16    6           THE COURT:  Do you have them, Mr. Steward?

05:17    7           MR. STEWARD:  I don't know whether I have them or

05:17    8   not, but I will sure look for them.

05:17    9           MR. KOLE:  Those are probably e-mails between Ms.

05:17   10   Bass and Ms. Pemcova, which the government obviously would

05:17   11   not have.

05:17   12           THE COURT:  And they are probably pertaining to

05:17   13   the mental health evaluation, not the facts concerning guilt

05:17   14   or innocence.  So I'm not going to require that they be

05:17   15   produced by the government.

05:17   16           No. 17, Dr. Rose Marie Pitt's evaluation dated

05:17   17   November 14, 2013.  That's irrelevant at this stage.

05:17   18           Finally, there is one additional motion.  That is

05:17   19   this -- well, there are two actually.  That is Moon William

05:17   20   Winfield.  The request reads:  "Any and all documents you

05:17   21   have regarding your relationship with your two famous

05:17   22   friends/business partners in Washington."

05:17   23           Rule 17 apparently doesn't place any geographical

05:17   24   limits on the Court for criminal subpoenas, but this is

05:17   25   incomprehensible.  It would be difficult for anybody

05:18     1    receiving this to understand what was expected of them.  You

05:18     2    are more than welcome to call Mr. Winfield.  Hopefully he

05:18     3    will voluntarily respond, but I'm not going to attach my

05:18     4    signature to an incomprehensible document, nor give the

05:18     5    impression that this Court is finding that this is relevant

05:18     6    when it's incomprehensible.

05:18     7            Finally, there is an additional motion you called

05:18     8    to the Court's attention that Mr. Kole started to allude to.

05:18     9            Mr. Kole.

05:18    10            MR. KOLE:  Yes, Your Honor.  It's very brief.  Ms.

05:18    11    Pemcova asked the Court to require the prosecution to answer

05:18    12    under oath that all exculpatory evidence was turned over.  I

05:18    13    think in regard to that, obviously under Brady, the

05:18    14    government has an obligation to provide exculpatory

05:18    15    evidence.  The government believes it has complied with

05:18    16    that.  And Ms. Pemcova had extensive opportunity to

05:19    17    cross-examine Agent Reitz about any materials that she might

05:19    18    not have.  In order to get a hearing where there would be

05:19    19    further testimony about that, she would need to make some

05:19    20    proffer or showing of -- a specific fact showing of a lack

05:19    21    of production.

05:19    22            THE COURT:  All right, now as far as putting one

05:19    23    of the parties under oath, the government knows its

05:19    24    affirmative duty in this regard.  It's quite aware of the

05:19    25    obligation it has.  I'm not going to place counsel under

05:19    1    oath with those representations.

05:19    2            The trial resumes tomorrow at 8:00.

05:19    3            MS. PEMCOVA:  There was one more motion asking to

05:19    4    continue the trial.

05:19    5            THE COURT:  I am denying that motion.

05:19    6            Now, Ms. Pemcova, how do you plan to proceed

05:19    7    tomorrow at this point?  You will either be arguing tomorrow

05:19    8    early in the morning so be prepared, or you will be

05:20    9    presenting a witness.  In other words, I want to caution you

05:20   10    and the government that in all likelihood we could be in

05:20   11    argument as early as tomorrow morning the first thing or

05:20   12    later in the day or the following day.  I just don't know.

05:20   13    I leave that to your wisdom and to counsel if you seek his

05:20   14    advice.  So tomorrow morning please be prompt, both parties,

05:20   15    at 8:00.

05:20   16            Good-night.

05:20   17            (Whereupon, the proceedings were concluded.)

        18                        *     *     *

        19

        20

        21

        22

        23

        24

        25

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

```
 1
 2
 3
 4                        CERTIFICATE
 5
 6          I hereby certify that pursuant to Section 753,
 7   Title 28, United States Code, the foregoing is a true and
 8   correct transcript of the stenographically reported
 9   proceedings held in the above-entitled matter and that the
10   transcript page format is in conformance with the
11   regulations of the Judicial Conference of the United States.
12
13   Date:  June 23, 2016
14
15                          /s/   Sharon A. Seffens  6/23/16
16                          _____
17                          SHARON A. SEFFENS, U.S. COURT REPORTER
18
19
20
21
22
23
24
25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER